## Ahrens v. Lansdale Board of Adjustment

*Bean, DeAngelis, Tredinnick & Giangiulio,* for appellant.

*High, Swartz, Roberts & Seidel,* for appellee.

FORREST, P. J., July 11, 1966.—This is an appeal from the decision of the Board of Adjustment of the Borough of Lansdale sustaining the decision of the borough building and zoning officer in issuing a building permit to the intervenors, Bruno and Tina D'Angelo, authorizing them to alter an existing garage situate on their premises, 60 Elm Drive, Lansdale, and authorizing them to conduct a "home occupation" therein.

The original application by Mrs. D'Angelo was in the form of a letter dated June 30, 1964, specifying her contemplated wedding gown and accessory "home occupation". Following the issuance of the permit, an appeal was filed with the board. A hearing was held on October 8, 1964, at which time the board, construing the permit as a building permit rather than a zoning permit, refused to allow any testimony as to use, but, nevertheless, held the use proper. The matter was

then appealed to this court. After argument, the court determined that a zoning issue was involved and ordered the matter remanded to the Lansdale Board of Adjustment for a full hearing on the zoning issue. Thereafter, the D'Angelos petitioned the Supreme Court of Pennsylvania to allow an appeal to said ruling, which was denied. A second hearing, pursuant to our order, was held on July 29, 1965, and on December 23, 1965, the board rendered its decision, again dismissing the appeal. This denial by the board is the basis of the matter now before the court which, after oral argument before the court en banc, is ready for disposition.

Since this court took no additional testimony, the scope of our review is confined to an examination of the record to determine whether the board was guilty of a manifest abuse of discretion or an error of law: Jacobi v. Zoning Board of Adjustment, 413 Pa. 286 (1964).

The premises in question are situate in a class A residence district, pursuant to the Lansdale zoning ordinance. Article IV, Section 300, relating to a class A residence district, provides as follows:

"Section 300. A building may be erected, altered or used, and a lot or premises may be used for any of the following purposes and for no other: . . .

"4. Accessory use on the same lot with, and customarily incidental to any of the above permitted uses. This shall be understood to include a professional office . . . , or rooms used for home occupations, provided that the office, studio or occupational room is located in a dwelling in which the practitioner resides or in a building accessory thereto, and provided further that no goods are publicly displayed on the premises".

The issue before the court is whether Mrs. D'Angelo's bridal service is a home occupation permitted in

this district or a commercial enterprise or business being conducted in a residential district, contrary to the zoning ordinance.

In resolving this issue, we must first define "home occupation"; said term not being defined by the zoning ordinance. On page 9 of its opinion, quoting from Bassett on Zoning, the board states:

"During the formative period of comprehensive zoning it became evidenced that districts could not be confined to principal uses only. It had always been customary for occupants of homes to carry on gainful employment as something accessory and incidental to the residential use. The doctor, the dentist, the lawyer or notary had from time immemorial used his own home for his office. Similarily, the dressmaker, milliner and music teacher worked in her own home. The earliest zoning ordinances took communities as they existed and did not try to prevent customary practices that met with no objection from the community".

Thus, the concept of a home occupation encompasses those historical and customary occupations which have been traditionally carried on incidentally to a residential use. It is apparent that the Borough of Lansdale has adopted this concept of "home occupation", as evidenced by the use of the words "customarily incidental" in describing permitted accessory uses. On page 8 of its opinion, the board states that "courts seem to be concerned with the manner in which the particular occupation was or would be conducted rather than its nature alone". Coupling the aforesaid with the requirement of non-public display of goods, we proceed to examine the use in this case.

Basically, Tina D'Angelo's operation is as follows: A prospective bride wishing to avail herself of Mrs. D'Angelo's services arrives by appointment. After a general discussion as to services desired, a showing of unfinished samples or pictures of gowns is followed by

discussions on fabric, necklines, sleeves, etc. Upon making a selection, the client's measurements are sent to New York or Boston, where the basic gown is manufactured. No cutting or sewing of the gown itself is done on the premises. Upon receiving the gown, Mrs. D'Angelo gives it style by adding lace applique and beads or other decorative material. In addition to any required adjustments in size, a headpiece or veil is made by Mrs. D'Angelo and perhaps gloves added to complete the ensemble. This same procedure is followed for the bridesmaids' gowns as well. She also furnishes other personal needs of the bride and her party, including underpinnings or crinolines. After all the sewing has been done, Mrs. D'Angelo, or her part-time seamstress, presses the articles, using a conventional iron and ironing board, and then hand delivers the entire outfit to the bride.

Intervenor's brief in support of the decision of the board, and the board's opinion, are based primarily upon the proposition that dressmaking and millinery are generally recognized as permissible accessory uses of a dwelling in the form of a home occupation. This basic proposition is sound; however, as the board stated in their opinion, the courts are concerned with the manner in which the occupation is conducted, rather than the nature alone.

Appellants base their objections primarily upon the manner and scope of the D'Angelo operation. The physical facilities are fairly extensive. The alterations to their oversize garage were valued by Mrs. D'Angelo at $4,000. The testimony indicated that the office space was not partitioned off, as originally planned, and that the closets designated for storage of "bridal gowns" are not put to that use.

The financial records indicate considerable volume for a home occupation. They show gross expenditures of $10,298.17 for the first six months of operation. In-

cluded in this sum is an item of wages in excess of $3,000. Concerning income during the period, Mr. Lampert, Mrs. D'Angelo's accountant, testified that he "took a tape of whatever moneys did come in in my head" and that the income roughly ran close to $11,-000.

The quarterly unemployment tax and Federal withholding returns filed by Mrs. D'Angelo for the first two quarters of 1965 listed three employes, Mary Roboschil, Christine McLaren and Anthony Rosano. During the period, Mary Roboschil, who testified that she works for Mrs. D'Angelo part time, some weeks not at all, some weeks one or two days and sometimes full weeks of 33 to 40 hours, received $882.60. Christine McLaren, who is primarily a domestic for Mrs. D'Angelo, also works part time in the "home occupation", according to the testimony of Mr. Lampert. Mr. Rosano is apparently a bill collector for Mrs. D'Angelo's former Railroad Avenue "Towne Shoppe" women's apparel business. In addition to the aforesaid, Mrs. D'Angelo has a Jackie Bombay do contracting work for her.

The record tends to indicate an annoying effect of the operation upon the neighborhood. Five neighbors testified as to increased traffic and parking in the area and the annoyance of customers in asking directions to the "Towne Shoppe".

Although allegedly not related to the manner and scope of the bridal service, the relationship of said use and the "Towne Shoppe" must be examined. For 19 years Mrs. D'Angelo was engaged in a full scale women's apparel business located at 12 Railroad Avenue in Lansdale, known as the "Towne Shoppe". The business was discontinued due to the condemnation of said property by the Lansdale Community Improvement Association. The fictitious name registration was not cancelled as of the date of the hearing, and the name

"Towne Shoppe" still appears on Mrs. D'Angelo's station wagon. The aforesaid tax forms retain the name "Towne Shoppe". In addition thereto, the name "Towne Shoppe" appears under the "Women's Apparel Shops" in the yellow page listings at 60 Elm Drive, Lansdale, in the 1965 local directory. "Town Shoppe" is also listed at 60 Elm Drive in the white pages of the June 1965 directory. In this regard, it must be noted that the testimony of the neighbors indicated persons were asking for directions to the "Towne Shoppe", and one had a business card which bore the inscription "Towne Shoppe, 60 Elm Drive". Although the court makes no specific findings on this relationship, we believe the evidence to be more than coincidental and not to have been adequately explained.

Is this operation a home occupation? We think not. Clearly, an operation of this magnitude is not incidental to a residential use. This is not the seamstress or dressmaker using a room in her home to sew for a limited clientele who receives a modest income therefrom. We are here concerned with an operation too extensive to be carried out by one individual. The employment of an assistant does not preclude an activity from being a home occupation, but it does warrant closer scrutiny by the court. This court has said that a doctor's nurse or a lawyer's secretary is to be expected in such professional offices: Appeal of Kollar, 28 D. & C. 2d 745, 81 Montg. 20 (1962). Does one expect a dressmaker or seamstress to have assistants? In a business operation, yes, but not in a home occupation.

A cursory review of the evidence leads inescapably to one conclusion—Mrs. D'Angelo is conducting a commercial enterprise, a business. The initial investment, the physical facilities and the volume of operation as well as the manner of operation clearly demonstrate

that this enterprise is a business which is being conducted in a residential area, contrary to the residential uses permitted by the Lansdale Borough zoning ordinance.

And now, July 11, 1966, after oral argument before the court en banc and upon consideration of the briefs of counsel, the decision of the zoning board of adjustment is reversed and the board is directed to notify intervenors to comply with the above decision of the court.